# In re Anonymous Nos. 55 D.B. 75 and 1 D.B. 78

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

JOHNSON, *Board Member,* December 21, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## 1. HISTORY OF PROCEEDINGS

Respondent is presently suspended from the practice of law by reason of an order entered by your honorable court June 22, 1978, pursuant to Rule 208(f) Pa.R.D.E. at No. 187 Disciplinary Board Docket No. 1.

On August 26, 1975, a petition for discipline was filed by the office of disciplinary counsel (No. 55 D.B. 75) charging the mishandling of estate funds by depositing in respondent's personal account, forgery of another attorney's signature and misstatement as to the investment of the estate funds. Respondent filed an answer to the petition and the matter was promptly referred to a hearing committee and hearing scheduled. A continuance was granted to petitioner and the matter referred to another hearing committee to conduct an investigatory hearing. Prior to the scheduled investigatory hearing respondent was hospitalized and a continuance granted. In the summer of 1977, petitioner learned respondent had recovered from his physical disability. Additional complaints had been received by the office of disciplinary counsel and consequently, on January 10, 1978, a second petition for discipline against respondent was filed (No. 1 D.B. 78). The second petition contained four charges of professional misconduct all involving the mishandling and misappropriation of clients' funds or funds held by respondent in a fiduciary capacity.

The second petition was referred to hearing committee [    ] to be consolidated with the first petition. A pre-hearing conference was scheduled for March 23, 1978, which respondent did not attend. At that time assistant disciplinary counsel was, upon motion, granted leave to amend the petition for discipline filed at No. 1 D.B. 78 as to the third charge contained therein. Notice of the amendment and notice of the hearing set for April 13, 1978, were duly served upon respondent. Respondent did not appear at the scheduled hearing, advising by letter it was his position that since the

time to file an answer to the amended petition for discipline as to Charge Three would not expire until the evening of the day set for hearing, he assumed no further proceedings would be held. The hearing committee proceeded with the hearing as scheduled on April 13, 1978, taking testimony on all matters except Charge Three, and set a continued hearing date of May 4, 1978. Again respondent did not appear at the May 4 hearing, at which time testimony on the combined petitions for discipline was completed.

Respondent filed a notice of appeal to the Supreme Court based upon the action of the hearing committee to proceed with the hearing scheduled April 13, 1978. Upon motion to quash filed by the office of disciplinary counsel, your honorable court entered an order June 1, 1978, granting the motion and quashing the appeal.

On August 4, 1978, hearing committee [   ] filed its report recommending disbarment. On August 25, 1978, respondent filed his brief on exceptions and requested oral argument. A panel of the disciplinary board, consisting of Alexander Unkovic, Dennis C. Harrington and Herbert J. Johnson, Jr., Chairman, was designated to hear oral argument on October 30, 1978. Oral argument was held at the designated time and place but respondent did not appear.

## II. DISCUSSION

Hearing Committee [   ], consisting of [   ], Chairman, [   ] and [   ], has provided the disciplinary board and your honorable court with an excellent report setting forth in detail its findings of facts and conclusions of law.

As to the charge contained in No. 55 D.B. 75, the hearing committee found that the conduct of respondent constituted violations of Disciplinary Rules 1-102(A)(4); 6-101(A)(3); 9-102(A); 9-102(B)(3); and 9-102(B)(4).

The petition for discipline filed to No. 1 D.B. 78 contained four charges: As to those charges the hearing committee found that the conduct of respondent constituted violations of the rules as follows:

As to Charge 1, 1-102(A)(4); 9-102(A); 9-102(B)(1); 9-102(B)(3) and 9-102(B)(4).

As to Charge 2, 1-102(A)(4); 9-102(A); and 9-102(B)(4).

As to Charge 3, 1-102(A)(4); 6-101(A)(3); 7-101(A)(3); 9-102(A); 9-102(B)(1); 9-102(B)(3); and 9-102(B)(4).

As to Charge 4, 1-102(A)(4); and 9-102(A).

A thorough review of the testimony and exhibits admitted into evidence persuades us the hearing committee and this board could reach no other conclusion.

### [A] ESTATE
### No. 55 D.B. 75

Respondent, as attorney for the executrix of this estate, obtained from the executrix a power of attorney which gave respondent the power to manage funds and transact the business of the estate, including the investment of estate funds. Indicative of respondent's predisposition in drafting the power of attorney, he included the wording "the right to commingle any said funds." Indeed, respondent not only proceeded to commingle the estate funds

with his own personal funds but also misappropriated the funds to his own use. Initially the estate funds were deposited to an estate checking account, requiring the co-signature of a fellow attorney by the name of [B]. On several occasions respondent withdrew funds from the estate checking account by forging the signature of [B]. Respondent made misrepresentations as to the amounts of money distributed to beneficiaries of the estate as well as misrepresentations as to where estate funds were invested. He misrepresented having invested estate funds in a particular financial institution, and, in fact, attempted to cover his misrepresentation by making an investment in that financial institution only after assistant disciplinary counsel had made an inquiry of the lending institution, which inquiry was related to respondent by an official of the lending institution. As clear evidence that respondent misappropriated estate funds is the fact that although he deposited $21,000 of estate funds into his own personal checking account, there were many occasions when the balance in that account fell way below the $21,000, and in fact on one occasion the account had a balance of $46.44 and on another was overdrawn.

Not only did respondent misappropriate the funds of the estate but in addition thereto he neglected his client's cause to the point that it became necessary for beneficiaries of the estate to petition the court for a citation upon the executrix, respondent's client, for her failure to file an inventory, statement of debts and deductions and final account. Respondent averted a hearing on the citation by his representation that the papers would be promptly filed. However, respondent did not pre-

pare or file the first and final account until almost two and one-half years after that representation was made to the court. Then in the account filed respondent misrepresented that funds had been invested in municipal bonds when in fact they had not been.

It would be impossible to ascertain the exact loss the estate sustained at the hands of respondent.

## [C] MATTER
### No. 1 D.B. 78, Charge 1

Respondent represented a client by the name of [C] in a malpractice claim. Respondent effected a settlement of the claim in the amount of $24,500 and on May 12, 1972, received a check of [   ] Insurance Company payable to [C] and respondent in that amount. On May 16, 1972, without any authorization from [C] as to the endorsement of the check, the check was endorsed and deposited by respondent in his personal checking account in the [D] National Bank. It was not until November 2, 1972, that respondent made settlement with [C]. Between the date of deposit on May 16, 1972, and the settlement with [C], the balance in the [D] National Bank checking account was on several occasions less than the $24,500 deposited to that account, thus leading to the only logical conclusion that the funds had been misappropriated by respondent. On November 2, 1972, in making settlement with the client, respondent issued a check to [C] in the amount of $14,430.75 drawn upon his personal checking account in the [E] Bank. The funds in the [E] Bank account at that time were adequate to pay the [C] check only because respondent had deposited $21,000 drawn on the checking account of the [A] Estate (No. 55 D.B. 75).

## [F] MATTER
### Charge 2

[F] was not a client of respondent. However, [F] sold property to a fire company represented by respondent. On August 20, 1974, respondent received a check in the amount of $8,200 payable to him from the fire company and closed the real estate transaction on behalf of the fire company with [F]. At that time respondent was instructed by [F] to apply the proceeds to a mortgage owed by [F] to the [G] National Bank. The settlement sheet prepared at the closing showed the amount to be $8,117.63 due to pay off the mortgage on the property being sold by [F] to the fire company. On August 22, 1975, respondent deposited the fire company check in his personal checking account where it was found that between the time of the deposit and the time the mortgage was paid off in October or November of 1974, the funds in that personal checking account were on several occasions less than the $8,117.63 required to pay off the mortgage. On October 30, 1974, respondent drew a check on his personal checking account in the [E] Bank to the [G] National Bank, paying off the [F] mortgage. When this check reached the bank for payment there were adequate funds in respondent's personal banking account only because he had on November 2, 1974, deposited a check in the amount of approximately $7,500 representing funds belonging to the [H] estate (1 D.B. 78, Charge 3). Respondent was at that time attorney for the estate's personal representatives.

## [H] ESTATE
### Charge 3

On August 12, 1974, [H] died intestate. Re-

spondent represented two heirs of [H] and obtained letters of administration granted to them. Neither of the personal representatives were specifically aware of the nature or amount of personal property owned by decedent. Here, as in the [A] estate (No. 55 D.B. 75), respondent had the personal representatives execute a power of attorney prepared by him and granting to respondent powers in regard to the administration and handling of the [H] estate. Beginning in September 1974, respondent obtained eight checks totaling approximately $84,820, all of which he deposited in his own personal checking account. It was one of these checks deposited to his personal checking account on November 2, 1974, that provided sufficient funds in that account to permit the check drawn to pay off the [F] mortgage (Charge 2) as mentioned under the discussion of that matter. After depositing the above items totaling approximately $84,820 into his personal checking account, the balance in that account was at many times inadequate to honor respondent's fiduciary obligations to the [H] estate and in fact, on one occasion had a balance of $13.67. In addition to the above funds, respondent presented a petition to court for the approval of the sale of real estate owned by decedent. Upon authorization of the Orphans' Court, respondent closed the sale of the real estate through Lawyer's Title Insurance Corporation, at which time he received a check in the approximate amount of $13,000 and $2,900 was held in escrow by the title company for the payment of the inheritance tax by the [H] estate. This $13,000 received for the estate was likewise deposited to a personal checking account of respondent and was misappropriated to his own use. Although the funds for the payment of the inheritance tax were escrowed by the title company on November 20, 1975,

those funds were still held in escrow at the time of the hearing on this matter and the tax remained unpaid. Respondent failed to advise his clients of the receipt of the funds previously mentioned and finally, when the clients found it necessary to secure other counsel, respondent furnished to that counsel false and misleading statements as to the investment of the funds. Down to the date of the final hearing on this matter the funds still had not been accounted for and turned over to the personal representatives.

It is to be noted that some of the funds of the [H] estate were deposited by respondent into a checking account at [ ] bank, N.A. maintained in the name "[I] & Company, Trust Account" with the address on the corporate form account card being that of respondent's law office, the authorized signators being [I], respondent, and [ ], purportedly as officers of that corporation. There is no corporation, foreign or domestic, registered with the Office of the Secretary of the Commonwealth of Pennsylvania in that name, nor is there any business entity registered under the Fictitious Names Act. This account, purporting to be a corporate account into which $6,408.66 of the [H] estate funds was deposited, was later reduced to a balance of $94.70. Thus, estate funds were dissipated through this account.

## [J] ESTATE
### Charge 4

[J], respondent's mother-in-law, died testate with the balance of two savings accounts and various shares of common stock in joint name with her husband, [K]. Respondent's wife was appointed executrix of the [J] estate and had a power of attorney from [K] which had been prepared by respon-

dent. By use of his wife's fiduciary capacity, the cash and proceeds of the jointly held stocks came into respondent's control and were deposited to his personal checking account. On one occasion the [J] funds were used to repay a personal loan owed by respondent to a business associate. On another occasion the deposit of the proceeds of the sale of [J] stock into his personal account provided sufficient funds in that account only because of the deposit, to repay the $11,000 to the [A] estate (No. 55 D.B. 75). It is recognized there may be a question of client-lawyer relationship in connection with this matter. However, the funds coming into the hands of respondent were clearly received in a fiduciary capacity and the fidelity of that capacity was violated.

## DUE PROCESS

In respondent's brief on exceptions he raised an issue of lack of due process which we feel compelled to address. In compliance with Disciplinary Board Rule 89.73 a pre-hearing conference was scheduled for March 23, 1978. Although respondent had timely notice of the pre-hearing conference, he did not attend. At the time of the pre-hearing conference, petitioner was granted leave to amend five paragraphs of the petition for discipline filed at No. 1 D.B. 78. The granting of leave to amend was in accordance with Disciplinary Board Rule 89.31. Disciplinary Board Rule 89.31 permits the amendment of a pending petition but is silent as to the time for filing an answer to an amendment. Likewise, Disciplinary Board Rule 89.54 relating to an answer is silent as to the matter of an amendment. The hearing on the consolidated petitions was scheduled for April 13, 1978. Respondent made no

formal request to the board chairman for a continuance of this hearing as required by Disciplinary Board Rule 89.7 but indicated by letter that he would not attend, claiming the matter was not at issue, apparently interpreting the rules to indicate his answer would not be required to be filed until the close of business on April 13, 1978, and the matter would not be at issue until his answer was filed. With this conclusion we disagree. The matter was at issue prior to the amendment and Disciplinary Board Rule 89.54(d) has no application in the case of an amendment to a petition. The purpose of Disciplinary Board Rule 89.54(d) is to provide for the disposition of a petition in the event a respondent-attorney fails to file an answer to an original petition.

Assuming, for the sake of argument, respondent had 20 days to file an answer before the matter was at issue, that 20 day period under the application of Disciplinary Board Rule 89.24 would have expired April 12, and not on April 13, 1978, as concluded by respondent. We find the amendment as deposited in United States Mail addressed to respondent at his last known address on March 23, 1978. Disciplinary Board Rule 89.24 provides that the date of service shall be the day when the document served is deposited in the United States Mail or is delivered in person, as the case may be. Consequently, 20 days from the date of service was April 12, 1978.

We find respondent's argument as to the lack of due process is without merit.

## CONCLUSION

A review of the five charges proven against respondent presents the melancholy picture of one

who by reason of his profession as a lawyer is placed in a position of trust. That trust was violated on numerous occasions by the misappropriation of clients' or other fiduciary funds, uttering of forged checks, false statements of the investment of clients' funds, the use of one client's funds to cover the prior misuse of another client's funds, robbing Peter to pay Paul, and even through the laundering of funds through a fictitious corporate bank account. Respondent's conduct has created such a maze, it is impossible to ascertain with certainty all of the harm suffered by his clients, but that they have been prejudiced is without doubt. Such dishonesty, fraud, deceit, misrepresentation and conduct which adversely reflects on an attorney's fitness to practice law brings disgrace upon the legal profession. It is too late to protect those victimized in the instant charges but the public must be protected from future conduct by such a member of the profession. This can be accomplished only by disbarment. We find no mitigating circumstances.

## IV. RECOMMENDATION

The board recommends that respondent be disbarred in accordance with Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement.

Mr. Anderson did not participate in the adjudication of this matter.

## ORDER

EAGEN, *C.J.*—And now, February 22, 1979, the recommendations of the disciplinary board dated December 21, 1978, are accepted; and it is ordered, that the said [respondent], be, and he is forthwith

disbarred in accordance with Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement, from practice of law in this court and in all the courts under its supervisory jurisdiction and until further order of the Supreme Court.